IKE GOLDSMITH, Plff.,

*v.*

NORTHERN ASSURANCE COMPANY LIMITED, Dft.

San Juan, Law, No. 1590.

Opinion filed March 15, 1923.

---

*Mr. O. B. Frazer* attorney for plaintiff.

*Mr. Henry G. Molina* purporting to act as attorney for the defendant.

ODLIN Judge, delivered the following opinion:

The complaint in this case was filed in the office of the clerk on December 19, 1922. It was signed by O. B. Frazer personally and was signed by Henry G. Molina personally as attorneys for the plaintiff. On February 23, 1923, there was filed with the clerk of this court a motion signed by Henry G. Molina in substance as follows: That the plaintiff, Ike Goldsmith, through his attorney, O. B. Frazer, asked Henry G. Molina to represent the plaintiff with Mr. Frazer in these suits; and that Mr. Molina accepted a retainer after being informed that the Home Insurance Company, a client of Mr. Molina, being interested in these matters, had joined with the defendants, meaning the Northern Assurance Company Limited, and other insurance companies in the selection of another attorney to represent them. That thereafter the Home Insurance Company advised Mr. Molina that they had been in error, as no other attorney had been selected to represent any of the insurance companies who were being sued by Mr. Ike Gold-

smith, and that the Home Insurance Company desired that Mr. Molina should defend these various cases, including Case No. 1592, being that of Goldsmith v. Home Ins. Co. The motion goes on to state that Mr. Molina replied that this was impossible, but upon the insistence of the defendants, the insurance companies, he agreed to represent them if the plaintiff, Ike Goldsmith, and his attorney, Mr. Frazer, should state in writing that they had no objection to the withdrawal of Mr. Molina as attorney for the plaintiff and agreed that he might represent the defendants. It further appears that on January 10, 1923, a letter was written by Mr. Frazer to Mr. Molina as follows: "Confirming telephone conversation regarding cases now pending in the United States district court of Ike Goldsmith v. Compañia L'Union de Paris, Royal Insurance Company, Limited, Northern Assurance Company, Limited, and Norwich Union Fire Insurance Society, Limited, in which you signed the complaints as attorney for the plaintiff together with myself neither Mr. Goldsmith nor I have any objection to your striking out your name as attorney for the plaintiff and to your appearing in each of those cases as attorney for the defendants."

The motion further states that Mr. Molina did not draw the complaints herein and that he did not receive any information, confidential or otherwise, from Ike Goldsmith or from his attorney, Mr. Frazer, that could in any way be used by Mr. Molina in the defense of these various actions. The motion concludes with a prayer that Mr. Molina be permitted to withdraw as attorney for the plaintiff and that his name and signature be stricken from all the complaints. There follows a formal consent in writing signed by Ike Goldsmith, plaintiff,

and by Mr. O. B. Frazer, attorney for Ike Goldsmith, that this motion be granted.

Thereafter, to writ: on the 24th day of February, 1923, while I was holding court at Ponce in this Island I signed an order as follows: "Upon the foregoing motion and consent thereto by plaintiff and his attorney, Mr. O. B. Frazer, the court believes it proper to permit Mr. Henry G. Molina to withdraw as associate counsel for the plaintiff and that he should represent the defendants in said suits, and it is hereby ordered that his name and signature be stricken from the complaints in the above entitled actions.

"At Ponce, P. R., this 24th day of February, 1923.

"(Signed) Arthur F. Odlin,

"Judge."

On re-examining the complaint filed in the case No. 1590 I find that the name of Henry G. Molina as originally typewritten in the first paragraph has received a pen stroke, but that the signature of Mr. Molina to the complaint remains the same as it was when he signed it. This pen stroke, as I am informed by the clerk, was made by Mr. Henry G. Molina himself shortly after the above order of February 24, and that he desired to run his pen in a similar manner through his signature at the end of the complaint, but was requested not to do so by Mrs. L. G. Donohue, deputy clerk of this court. Mr. Molina has now applied to me for leave to have his name eliminated by pen strokes from the complaint in this case wherever it shall appear, upon the claim made by him that this action is proper in view of the order signed by me at Ponce on February 24, 1923. It has always been my opinion and is my opinion now that when a document has been filed as part of a

court record and the court thereafter directs that all or part of such court record shall be stricken, this does not mean that there shall be a physical elimination, but that the document shall remain physically and typographically in exactly the same condition as it was when filed, and the order of the court shall operate merely as a judgment or decree that such matter should *be deemed as stricken.* For this reason I, myself, restored with my own hand and pen the name of Henry G. Molina in the second line of the first paragraph of the complaint in this case so that the complaint would now appear to be in exactly the same form as it was when originally filed with the clerk.

It is my firm belief that the act of the deputy clerk, Mrs. L. G. Donohue, when she required Mr. Molina to desist from his work of obliteration, was absolutely correct, and she is now upheld and commended by me.

A moment's reflection will show the absurdity, also the quite possible actual danger, of the doctrine now urged by Mr. Molina. Suppose the judge of this court should order or permit a physical obliteration of a pleading or of a journal entry, or of any document filed with the clerk, and thereafter this ruling were held to be error by the court of appeals at Boston, or by the Supreme Court at Washington, how could that error be corrected? It could perhaps be attempted by chemicals, restoring the document to its original language; but this operation might be impracticable in many instances. Furthermore, if physical obliteration be permissible, then it should logically be allowed a moving party or an attorney to cut with shears or penknife certain portions of the record and then destroy such

removed portion.   On a reversal by an appellate court, how could the judge obey the mandate?

Of course I am well aware that this present decision of mine is a direct and positive disregard of a precedent in this court. It is true that on August 6, 1912, the Honorable Paul Charlton, then judge of this court, directed the clerk of this court to expunge physically from the records of this court any reference to the name of a lawyer (not Mr. Molina) in connection with Law Case, No. 734, being that of Domingo Quintana v. Guardian Assur. Co. and designating specifically certain portions of pages 226 to 230, inclusive, of the journal of this court for the year 1910, made at a time when the Honorable John J. Jenkins was judge of this court.   And it seems that this very remarkable order was carried into effect.

Let us suppose for a moment that this order of Judge Charlton's had been reversed by the appellate court.   How would he correct his own error?   If Judge Charlton in 1912 had power to obliterate an order made by Judge Jenkins in 1910, it necessarily follows that I could proceed in this year of our Lord 1923 to obliterate an order made by Judge Holt in 1901.   And if I could obliterate one order made by Judge Holt in 1901, I must necessarily have power to obliterate all records made by all the Judges who preceded me, and the court would have no records remaining except those which cover the time since May 7, 1921, when I took charge of this court.

For the reasons stated, I reject most emphatically and now destroy so far as I can the precedent arising from the ruling made by Judge Charlton.

My study of this very peculiar matter has convinced me that my former order herein (made at Ponce quite hurriedly on

38

February 24, 1923, while I was engaged in a most complicated jury trial) is incorrect, and I must modify it. Fairness to Mr. Molina and to the various insurance companies requires me to state my reasons. Mr. Molina has admitted in his motion filed on February 23, 1923, that he had accepted a retainer from Mr. Ike Goldsmith, and there is no allegation of a return of such retainer, or of any offer to return the same. I therefore deem it improper for Mr. Molina to act as attorney for the defendant. It is true that Mr. Ike Goldsmith and Mr. O. B. Frazer, his attorney, have consented that Mr. Molina may act as attorney for the defendant, but consent by these two gentlemen does not bind me.

I can easily imagine the keen delight Mr. Ike Goldsmith and Mr. O. B. Frazer would have to watch Mr. Molina in the trial of this case for the defendant insurance company, with money in one pocket received from the plaintiff, and money in the other pocket received from the defendant. But as long as I remain in charge of this court I shall decline to preside over any trial when any lawyer, be he eminent or obscure, participates in such trial with fees derived from parties to the cause whose interests are opposed or conflicting, *Provided* that fact be made known to me. The ethics of the profession demand this.

Therefore my former order herein is now modified. Mr. H. G. Molina will not be permitted to act as counsel for the defendant; and his name will be deemed as stricken from the complaint as attorney for the plaintiff. The clerk is directed to notify Mr. Molina, and also the agent or agents of the defendant corporation, upon whom service was made, that said

defendant is allowed until March 31, 1923, to arrange for other counsel. Meanwhile no default will be entered.

Done and Ordered at San Juan, Porto Rico, this 15th day of March, 1923.

To this order Mr. H. G. Molina excepts; also the defendant excepts.